**STATE of Maine**

v.

**Samuel A. BUNKER.**

Supreme Judicial Court of Maine.

Argued Nov. 21, 1980.

Decided Nov. 3, 1981.

**414**

Michael Povich, Dist. Atty., Ellsworth (orally), for plaintiff.

Markos & Roy, James L. Markos, Jr., Ellsworth, Patricia Danisinka, Skowhegan (orally), for defendant.

Before McKUSICK, C. J., WERNICK[*], GODFREY, NICHOLS, GLASSMAN[**] and ROBERTS, JJ.

ROBERTS, Justice.

Samuel A. Bunker appeals from judgments convicting him of rape, 17–A M.R. S.A. § 252 (Supp.1978), gross sexual misconduct, 17–A M.R.S.A. § 253 (Supp.1978), and kidnapping, 17–A M.R.S.A. § 301 (Supp. 1978). These convictions arose out of a single episode in which Bunker removed a ten-year-old girl from a school playground, drove her thirteen miles away to a wood area, sexually molested and raped her, and then returned her to the playground. After a jury found him guilty, the Superior Court sentenced Bunker to twenty years imprisonment for gross sexual misconduct and twenty years imprisonment for rape, each sentence to be served concurrently. For the kidnapping conviction, the Superior Court sentenced Bunker to ten years imprisonment to be served consecutively. On appeal, Bunker challenges the sufficiency of the evidence to support the separate kidnapping conviction under 17–A M.R.S.A.

[*] WERNICK, J., sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

[**] GLASSMAN, J., sat at oral argument and participated in the initial conference, but died before this opinion was adopted.

§ 301 (Supp.1978). Alternatively, in the event this Court affirms the kidnapping conviction, he contends that the trial judge erred in ordering a consecutive sentence for kidnapping under 17–A M.R.S.A. § 1155(5)(B) (Supp.1978).[1] We affirm the judgments of conviction, but vacate the sentences imposed.

**I**

The jury could reasonably have found the following facts beyond a reasonable doubt. On the afternoon of August 11, 1979, Samuel A. Bunker drove his truck by a playground at the Washington Street school in Brewer. A ten-year-old girl was playing with a friend and two other young boys. Bunker stopped his vehicle and asked the ten-year-old girl if she would go with him for the purpose of packing dishes. She entered the vehicle. Bunker drove her by a circuitous route to a deserted wooded area off Route 46 in the Town of Bucksport, Hancock County. By the most direct route, this wooded area was 13 miles from where he had found the girl. In this wooded area, Bunker instructed the ten-year-old girl to remove her clothing and to sexually manipulate him. She complied. Shortly thereafter, Bunker had intercourse with her. Approximately two hours after Bunker had left the Brewer playground with the victim and committed the acts described above, he drove her back to the Brewer playground area, gave her five dollars, and told her not to inform the police about the incident or he would harm her.

On appeal, Bunker contends that this evidence is insufficient to support a conviction for kidnapping under 17–A M.R.S.A. § 301 (Supp.1978) because the act of asportation was "merely incidental" to the principal criminal acts, rape and gross sexual misconduct. Bunker's authority for the proposi-

1. Section 1155 was amended by P.L.1979, ch. 512, § 35, effective September 14, 1979.

tion chiefly rests on two cases from other jurisdictions, *People v. Daniels*, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal.Rptr. 897 (1969) and *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965). In both *Daniels* and *Levy*, the courts concluded that a kidnapping conviction was not supported by the evidence because the act of asportation had no independent criminal significance. In *Daniels*, the California Supreme Court overturned a kidnapping conviction where the victims were robbed and raped in their own homes. The basis for the conviction below had been the victims' forced movement from room to room. In *Levy*, the New York Court of Appeals reversed kidnapping convictions of three defendants. A married couple was accosted just after they had parked their car in front of their apartment and stepped out. Three defendants forced the couple back into their car at gun point. Shortly thereafter, one defendant assumed control of the vehicle and drove the couple and the two co-defendants about town for 20 minutes. During the trip, which encompassed 27 blocks, the defendants robbed the couple of their money and jewelry. *See also People v. Cassidy*, 40 N.Y.2d 763, 390 N.Y.S.2d 45, 358 N.E.2d 870 (1976).

We decline the invitation to follow the holding of these cases because longstanding principles of the criminal law in this state and the language of our present criminal code itself have effectively mitigated those risks of misapplication of the offense of kidnapping that concerned the California and New York courts. In both *Daniels* and *Levy*, a modern "felony merger" doctrine of judicial origin was invoked. The purpose of the doctrine was described in *People v. Cassidy*, 40 N.Y.2d at 765, 390 N.Y.S.2d at 47, 358 N.E.2d at 872, by the New York Court of Appeals:

The merger doctrine was of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where the period of abduction was brief, the criminal enterprise in its entirety appeared as no more than an offense of robbery or rape, and there was lacking a genuine "kidnapping" flavor....

At the outset, we note that this Court has consistently refused to adopt such a doctrine. *E. g., State v. Williams*, Me., 395 A.2d 1158, 1168 (1978); *State v. Thurlow*, Me., 387 A.2d 22, 24 (1978); *State v. Trott*, Me., 289 A.2d 414, 419 (1972). Indeed, our precode decisional law quite clearly establishes that multiple convictions arising out of one criminal episode are permissible so long as the various offenses are analytically distinct or different facts are required to convict on each offense. *See State v. Williams*, 395 A.2d at 1167–69; *Newell v. State*, Me., 371 A.2d 118, 119 (1977); *State v. Gagne*, Me., 362 A.2d 166, 173 (1976).

The subsection of Maine's kidnapping statute relevant to this appeal provided that "[a] person is guilty of kidnapping if . . . [h]e knowingly *restrains* another person with the intent to . . . subject him to conduct defined as criminal in chapter 11." 17–A M.R.S.A. § 301(1)(A)(3) (Supp.1978) (emphasis supplied). Chapter 11 of Title 17–A included the crimes of rape and gross sexual misconduct. Section 301(2) defined "restrain" in pertinent part as "to restrict substantially the movements of another person without his consent or other lawful authority by . . . [m]oving him a substantial distance from the vicinity where he is found; or . . . [c]onfining him for a substantial period . . . in a place to which he has been `moved." 17–A M.R.S.A. § 301(2)(B) and (C) (Supp.1978).[2]

2. In its entirety, the section then provided as follows:

§ 301. **Kidnapping**

1. A person is guilty of kidnapping if either:

A. He knowingly restrains another person with the intent to

(1) hold him for ransom or reward;

(2) use him as a shield or hostage;

(3) inflict bodily injury upon him or subject him to conduct defined as criminal in chapter 11;

(4) terrorize him or a 3rd person;

(5) facilitate the commission of another crime by any person or flight thereafter; or

Maine's kidnapping statute contains phrases identical to those found in the Model Penal Code.[3] For instance, "restrain" is defined in terms of moving the victim "a substantial distance from the vicinity where he is found," or of "confining another for a substantial period." *Compare* 17–A M.R.S.A. § 301(2)(B) and (C) (Supp.1978) *with* Model Penal Code § 212.1 (Official Draft, 1980). *See State v. Estes*, Me., 418 A.2d 1108, 1112–13 (1980). At the time the felo-

ny merger rule was adopted in New York and California, both states had kidnapping statutes that did not employ such definitive phrases. *See People v. Daniels; People v. Levy.* As a result, a judicial doctrine of construction limiting the language of their statutes to avoid abuse of the kidnapping provisions might well have been necessary.[4]

Under the Maine statute, however, as the commentary accompanying the Model Penal Code provision suggests,[5] specific language

(6) interfere with the performance of any governmental or political function; or

B. He knowingly restrains another person:

(1) under circumstances which, in fact, expose such other person to risk of serious bodily injury; or

(2) by secreting and holding him in a place where he is not likely to be found.

2. "Restrain" means to restrict substantially the movements of another person without his consent or other lawful authority by:

A. Removing him from his residence, place of business, or from a school; or

B. Moving him a substantial distance from the vicinity where he is found; or

C. Confining him for a substantial period either in the place where the restriction commences or in a place to which he has been moved.

3. Kidnapping is a Class A crime. It is however, a defense which reduces the crime to a Class B crime, if the defendant voluntarily released the victim alive and not suffering from serious bodily injury, in a safe place prior to trial.

3. The A.L.I. adopted the following provision:

A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

(a) to hold for ransom or reward, or as a shield or hostage; or

(b) to facilitate commission of any felony or flight thereafter; or

(c) to inflict bodily injury on or to terrorize the victim or another; or

(d) to interfere with the performance of any governmental or political function.

Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished with-

out the consent of a parent, guardian or other person responsible for general supervision of his welfare.

4. We are aware that New York has retained the felony merger rule notwithstanding the fact that their kidnapping statutes have since been amended along the lines of the Model Code. *E. g., People v. Cassidy*, 40 N.Y.2d 763, 390 N.Y.S.2d 45, 358 N.E.2d 870 (1976). In *Cassidy* the court overturned three kidnapping convictions. The facts of one conviction in *Cassidy* clearly suggest the difficulty of drawing the line between what may be kidnapping and what may be merely incidental asportation. A nurse was grabbed on the street while walking home from work. She was forced across the street into an abandoned building where she was robbed. Shortly thereafter, she was taken across a courtyard into an adjoining building and up a flight of stairs into a small room where she was raped. Later she was released and managed to make her way home. The Court of Appeals affirmed the lower court's holding that such conduct was not kidnapping. 40 N.Y.2d at 766–768, 390 N.Y.S.2d at 47–48, 358 N.E.2d at 873–74. To avoid emasculation of the kidnapping statute, however, New York courts have developed an exception to the felony merger doctrine that works to apply the statute where the *means* employed in the asportation are particularly egregious. *People v. Miles*, 23 N.Y.2d 527, 539, 297 N.Y.S.2d 913, 245 N.E.2d 688, *cert. denied*, 395 U.S. 948, 89 S.Ct. 2028, 23 L.Ed.2d 467 (1969). For the reasons set forth in the body of this opinion, this Court can discern no good reason for complicating the application of our code by adopting a doctrine which is novel to Maine law.

5. The drafters of the Model Code thoughtfully explored the problems associated with overly broad kidnapping statutes, but concluded that a carefully defined statute was still appropriate:

[A] valid justification exists for retaining kidnapping as a distinct crime. If the offense is confined to cases of substantial isolation of the victim from his normal environment, it punishes a frightening and dangerous form of

of the provision is designed to limit its application to conduct which, apart from other crimes that may have been committed in the same episode, is culpable in and of itself. 17–A M.R.S.A. § 301, Comment (Supp.1978); Model Penal Code § 212.1, Revised Comment at 222 (Official Draft, 1980). *See State v. Estes*, Me., 418 A.2d 1108, 1112–13 (1980). Responsible application of such language as "substantial distance" or "significant period" by our trial courts thus properly limits the reach of 17–A M.R.S.A. § 301 (Supp.1978). Moreover, as our discussion below regarding the imposition of consecutive sentences reveals more specifically,[6] the concern that kidnapping charges can be exploited by the prosecution to impose more onerous sentences for conduct which only facilitates another crime is precluded by limitations prescribed in 17–A M.R.S.A. § 1155 (Supp.1978) on the discretion of trial judges to impose consecutive sentences.

Turning to the instant case, we conclude that the elements of kidnapping specifically detailed in our code are amply supported by the facts reviewed above. Here the victim, a ten-year-old girl, was removed by Bunker from a school playground where she was playing with other children and transported to an isolated wooded area some thirteen miles away in another county. The victim was with the defendant for at least two hours. While the asportation may have been preparatory to the commission of rape and gross sexual misconduct, we think that the risks of harm and fright to this child, beyond that which she actually suffered, were significantly enhanced by her asportation and isolation. We acknowledge that there may well be cases in which the line between kidnapping, even as it is specifically defined in our code, and asportation merely incidental to the commission of other crimes is difficult to draw. The case before this Court, however, is not such a case.

## II

Bunker argues in the alternative that the Superior Court erred in imposing a consecutive ten-year sentence of imprisonment for kidnapping because the Legislature intended 17–A M.R.S.A. § 1155 (Supp.1978) to prohibit compounding sentences for multiple convictions arising out of the same criminal episode.[7] In response, the State contends that a consecutive sentence was imposed by the Superior Court with proper deference to the criteria set forth in 17–A M.R.S.A. § 1155 (Supp.1978).[8] Moreover,

---

aggression not adequately dealt with elsewhere. Since such conduct does not fall within the ambit of provisions on bodily harm, there must be at least some crime in this field. Relatively minor sanctions for false imprisonment will be inadequate where the removal or confinement of the victim exposes him to risk of serious bodily injury or amounts to a form of terrorizing. Furthermore, without a major offense of kidnapping, removal or confinement to facilitate another crime will be punished too leniently where the other crime is a lesser offense. Thus, for example, removal of a person to an isolated place to commit a petty theft would, absent this section, authorize no more than punishment for a misdemeanor. Such minor penalties scarcely seem proportionate to the gravity of the defendant's conduct considered as a whole. Certainly a disposition to theft or violence is more dangerous when coupled with action designed to give the actor a free hand in dealing with his victim. Finally, retaining kidnapping as a major felony is warranted on the ground that an isolated victim may be killed and disposed of in such a way as to make proof of murder impossible, even though the fact of abduction for a criminal purpose is clear. In such instances, the law should not falter on the actor's success at shielding the ultimate wrong from the public eye but should assign stringent punishment to the related course of conduct known as kidnapping.

Model Penal Code § 212.1, Revised Comment at 222 (Official Draft, 1980).

6. *See* part II, *infra* at 417–419.

7. The appellant's argument does not appear to be directed at the sentencing court's compliance with 17–A M.R.S.A. § 1155(3) (Supp.1978) which requires the court to state on the record its reasons for imposing consecutive sentences.

8. Since the offenses were committed August 11, 1979, we apply the former provisions of section 1155 which then provided in pertinent part:

   2. When multiple sentences of imprisonment are imposed on a person at the same

the State contends that 17–A M.R.S.A. § 1155(5) (Supp.1978) does not proscribe imposition of a consecutive sentence for a kidnapping conviction when the kidnapping offense was more than merely incidental to the commission of the crimes of gross sexual misconduct and rape.

■ Section 1155(2) expresses the general rule that sentences are normally to be served concurrently. *See* 1975 Comment *accompanying* 17–A M.R.S.A. § 1155 (Supp. 1978). Under the code, as under precode law,[9] the imposition of consecutive sentences is within the discretion of the sentencing trial judge. *State v. Williams*, Me., 395 A.2d 1158, 1169 (1978). The exercise of that discretion is not without limits however. While subsection (4) of section 1155 sets forth certain general criteria which, if present in the case before the sentencing court, may warrant the imposition of consecutive sentences, subsection (5) prescribes specific limitations on the trial court's discretion to order consecutive sentences.[10] Because this Court's jurisdiction is limited to review of the legality of a sentencing order of the Superior Court, the sole issue before us is whether the limitations prescribed in 17–A M.R.S.A. § 1155(5)(B)

(Supp.1978) prohibit the imposition of a consecutive sentence for the particular kidnapping conviction under the circumstances of this case. *See State v. Carver*, Me., 330 A.2d 785 (1975); 15 M.R.S.A. §§ 2141–2144.

Section 1155(5) provides in pertinent part that "[a] defendant may not be sentenced to consecutive terms . . . for more than one crime when . . . [o]ne crime consists *only* of a conspiracy, attempt, solicitation or other form of preparation to commit, *or facilitation of,* the other. . . ." (Emphasis supplied.) Thus, within the framework of the kidnapping and sentencing sections here involved, the Legislature has determined that there may occur conduct which, although not totally subsumed within other criminal conduct so as to render separate conviction unfair, is, nevertheless, so nearly coincident as to make separate punishment unwarranted. By adding the phrase "or other form of preparation to commit, or facilitation of, the other" the Legislature made clear that consecutive sentencing may be unlawful for crimes outside the traditional common law rubric of conspiracy, attempt, or solicitation.

The drafters of the Model Penal Code emphasized that the justification for ex-

time, or when such a sentence is imposed on a person who is already subject to an undischarged term of imprisonment, the sentences shall run concurrently, or, subject to the provisions of this section, consecutively, as determined by the court. When multiple fines are imposed on a person or an organization, the court may, subject to the provisions of this section, sentence the person or organization to pay the cumulated amount or the highest single fine. Sentences shall run concurrently and fines shall not be cumulated unless otherwise specified by the court pursuant to subsections 3 and 4.

3. Unless the court sets forth in detail for the record the findings described in subsection 4, it shall not either:

A. Impose consecutive imprisonment terms or cumulative fines which exceed the maximum term or the highest fine authorized for the most serious crime involved; or

B. Impose consecutive imprisonment terms or cumulative fines at all.

4. The findings referred to in subsection 3 are the reasons why, having regard to the nature and circumstances of the crime, and the history and character of the defendant, the court is of the opinion that there are

exceptional features to the case which require the sentence imposed.

5. A defendant may not be sentenced to consecutive terms or cumulative fines for more than one crime when:

A. One crime is an included crime of the other;

B. One crime consists only of a conspiracy, attempt, solicitation or other form of preparation to commit, or facilitation of, the other;

C. The crimes differ only in that one is defined to prohibit a designated kind of conduct generally, and the other to prohibit a specific instance of such conduct; or

D. In separate trials, inconsistent findings of fact are required to establish the commission of the crimes.

9. *Lizotte v. State*, Me., 279 A.2d 524, 526 (1971).

10. With the exception of subsection (5)(B), none of these provisions has tenable application to crimes committed in this case. Our discussion is accordingly limited to the impact of section 1155(5)(B) on the legality of the sentencing order.

tending the definition of kidnapping beyond seizure for ransom depends in part on the provisions of the Model Penal Code restricting cumulation of punishments. Model Penal Code § 212.1, Revised Comment at 229 (Official Draft, 1980). We also note that our section 1155 is based in part upon section 3204 of the proposed Federal Criminal Code. Maine Criminal Law Revision Commission, Title D3, ch. 31, § 5, Comment (Tent. Draft, June 16, 1972). The comment to the proposed Federal Criminal Code section 3204 makes clear that one of its purposes is to prevent "consecutive sentences for offenses which were committed as part of a single course of conduct during which there was *no substantial change in the nature of the criminal objective.*" Final Report of the National Commission on Reform of Federal Criminal Laws § 3204, Comment (1971) (emphasis supplied). Thus we focus upon the purpose for which the defendant engaged in criminal conduct.

■ In the case before us, Bunker was indicted under 17–A M.R.S.A. § 301(1)(A)(3) (Supp.1978). This particular subsection of the kidnapping statute explicitly makes the defendant's intent to subject the victim to any of the sex offenses prescribed in chapter eleven of the code an element of the crime. The record amply supports Bunker's conviction for rape and gross sexual misconduct. It also clearly indicates that Bunker restrained the victim with the intent to subject her to rape and gross sexual misconduct. There is simply no evidence to indicate that Bunker's restraint of the victim was effected for any purpose other than to facilitate the crimes of gross sexual misconduct and rape. While the kidnapping here was more than "merely incidental"[11] to the accomplishment of the criminal purpose, we conclude that its only purpose was to facilitate the commission of the sex offences and hold, therefore, that the sentence of ten years for kidnapping was unlawfully made consecutive.[12]

■ Although the sentence on the kidnapping charge only has been attacked on appeal, we vacate all of the sentences imposed herein. We do so for two reasons. First, the imposition of criminal sanctions is a most difficult proposition often involving a great variety of considerations. We think the sentencing judge should be afforded maximum flexibility and should not be hampered by having only a part of the sentencing package returned to him. Second, under 15 M.R.S.A. § 2115–A it is not necessary for the State to cross-appeal in order to protect its interest should only a part of the sentencing prove invalid. Each of the three sentences are so interrelated as to warrant vacation and remand of them all for a new sentencing proceeding at which both the defendant and the State may be heard. *See Bennett v. State,* Me., 433 A.2d 431 (1981).

The entry is:

Judgments of conviction affirmed.

Sentences vacated.

Remanded to the Superior Court for imposition of sentences in accordance with the opinion herein.

All concurring.

---

11. See part I of this opinion.

12. We intimate no opinion as to whether the separate sentences for rape and gross sexual misconduct could be ordered consecutively.